Case No. 13-2113

──────────────────────────────

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

──────────────────────────────

JANET BEASLEY AND GORDON BEASLEY,

*Appellants,*

v.

RED ROCK FINANCIAL SERVICES, LLC,

*Appellee.*

──────────────────────────────

**RESPONSE BRIEF OF APPELLEE**

──────────────────────────────

Virginia M. Sadler, VSB No. 48736
JORDAN COYNE LLP
10509 Judicial Drive, Suite 200
Fairfax, Virginia 22030
(703) 246-0900 (Telephone)
(703) 591-3673 (Facsimile)
v.sadler@jocs-law.com

*Counsel for Appellee Red Rock Financial
Services, LLC*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __13-2113__       Caption: <u>Janet Beasley; Gordon Beasley v. Red Rock Financial Services, LLC</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Red Rock Financial Services, LLC</u>
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
         (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                         ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
      Red Rock Financial Services, LLC is a wholly-owned subsidiary of RMI Management, LLC.
      RMI Management, LLC is owned by Kevin P. Wallace and FSRM (NV), Inc.  FSRM (NV), Inc. is
      a wholly owned subsidiary of FirstService Corporation.  FirstService Corporation is a publicly
      tranded corporation on NASDAQ and the Toronto Stock Exchange.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                             ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

    None other than the entities identified in response to No. 2, above.


5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:


6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:


Signature: _*Virginia Shaller*_     Date: _____9/25/2013_____

Counsel for: Red Rock Financial Services, LLC

## CERTIFICATE OF SERVICE
****************************

I certify that on _____9/25/2013_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Ernest P. Francis
Ernest P. Francis, LTD
1655 North Fort Myer Drive
Suite 700
Arlington, Virginia 22209
Counsel for Appellants
(Via CM/ECF)


_*Virginia Shaller*_                    _____9/25/2013_____
(signature)                                    (date)

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES……………………………………………...i

I.  STATEMENT OF CASE AND FACTS……………………………..1

II.  PROCEDURAL /SETTLEMENT NEGOTIATION
    HISTORY…………………………………………………………….3

III.  SUMMARY OF ARGUMENT……………………………………7

IV.  ARGUMENT…………………………………………………..10

    A.  The District Court Did Not Err in its Rulings and
        Any Error was Harmless………………………………… …..10

    B.  The Trial Court did not Err in Granting the Motion
        For Judgment as a Matter of Law………………………….. ..12

        1.  The stipulation did not relieve Plaintiffs of
            the burden of establishing that a violation
            of the Act caused their alleged damages…………..…..13

        2.  The Beasleys had the burden of showing that
            any violations of the Act by Red Rock were
            the proximate cause of Plaintiff's purported
            damages……………………………………………….....13

        3.  Apportionment of damages is not applicable
            to this case…………………………………………..16

    C.  The District Court's Admission of Evidence by
        Defendant Does Not Constitute Reversible Error………... …..16

    D.  The Beasleys' Challenge to Jury Instruction
        Cannot  Support Reversible Error    ……………………. …..19

1.     The Beasleys' challenge to Instruction No. 14's statement of the law is not reversible error…………..20

2.     The District Court did not err in offering the *bona fide* effort defense………………………..22

3.     The District Court's decision to preclude the instruction on pre-judgment interest was not in error     …………………………………………..26

E.     The District Court's Ruling with respect to Attorney's Fees was Appropriate under the Circumstances of this Case     …………………………………….. 30

1.     Factors of fee analysis and discretionary assessment   ……………………………………… ..31

2.     The Court took a holistic view of the settlement negotiations between the parties and the Appellants' relative success as to each, not the limited view argued by Appellants………………..33

3.     Appellants' position misconceives the import of Red Rock's Offers of Judgment     ………………….. ..35

4.     The District Court's Ruling on Fees is Supported by *Nigh*……………………………….. ...38

V.     CONCLUSION……………………………………………… …...39

VI.     STATEMENT AS TO ORAL ARGUMENT……………………..40

CERTIFICATE OF COMPLIANCE (FRAP 32(a)(7)(b)(c) …………….41

CERTIFICATE OF SERVICE……………………………………………..42

ADDENDUM…………………………………………………………….43

# TABLE OF AUTHORITIES

<u>**CASES**</u>                                                                    <u>**PAGE**</u>

*Alevromagiros v. Hechinger Co.,* 993 F.2d 417 (4th Cir. 1993) ......... 12

*Alexander v. Mayor & Counsel of Cheverly, Md.*, 953 F.2d 160
(4th Cir. 1992) ...................................................................... 32

*American Timber & Trading Co. v. First Nat'l Bank*, 690 F.2d
781 (9th Cir. 1982) ............................................................... 29

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 *(1986)*...................... 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................. 25

*Ayzelman v. Statewide Credit Servs. Corp.*, 242 F.R.D. 23
(E.D.N.Y. 2007) .................................................................... 29

*Bailey v. Cnty. of Georgetown*, 94 F.3d 152 (4th Cir. 1996) ... 12, 19, 20

*Barber v. Kimbrell's Inc.*, 577 F.2d 216 (4th Cir. 1978) ............. 31, 32

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ............................. 25

*Blau v. Lehman*, 368 U.S. 403 (1962) ............................................... 27

*Board of County Commissioners v. United States*, 308 U.S. 343
(1939) ................................................................................... 27

*Clem v. Cobreau,* 98 Fed. Appx. 197 (4th Cir. 2004) ........................ 25

*Eastern Auto Distrib. v. Peugeot Motors of Am.*, 795 F.2d 329
(4th Cir. 1986).....................................................................................12

*Enwonwu v. Trans Union, LLC,* 364 F. Supp. 2d 1361
(M.D. Ga. 2005) ................................................................................14

*Exxon Co. v. Sofec*, 517 U.S. 830 (1996) ...........................................16

*Farrar v. Hobby*, 506 U.S. 103 (1992) ................................................31

*First Federal Sav. & Loan Ass'n v. Chrysler Credit Corp.,*
981 F.2d 127 (4th Cir. 1992) ..............................................................28

*Fussman v. Novartis Pharms. Corp.,* 509 Fed. Appx. 215
(4th Cir. 2013)..............................................................................19, 20

*Garrett v. Trans Union, LLC*, 2006 U.S. Dist. LEXIS 73395,
(S.D. Oh. 2006) ...................................................................................14

*Graziano v. Harrison*, 950 F.2d 107 (3d Cir. 1991)............................27

*Hensley v. Eckerhart*, 461 U.S. 424 (1983).........................................31

*Howard v. Gonzalez,* 658 F.2d 352 (5th Cir.1981) .............................11

*Huddleston v. Herman & MacLean*, 640 F.2d 534 (5th Cir.1981)......27

*Johnson v. City of Aiken*, 278 F.3d 333 (4th Cir. 2002) ...............34, 35

*Lawrence v. Chabot,* 182 Fed. Appx. 442 (6th Cir. 2006) ..................25

*Lopez v. Asmar's Mediterranean Food, Inc.,* 2011 U.S. Dist.
LEXIS 2265 (E.D. Va. 2011)...............................................................25

*Manopla v. Bryant, Hodge & Assocs.*, *LLC*, 2014 U.S. Dist.
LEXIS 24554 (D.N.J. Feb. 11, 2014) ..................................................29

*Marek v. Chesny*, 473 U.S. 1 (1984)....................................................36

*Mims v. Cent. Mfrs. Mut. Ins. Co.,* 178 F.2d 56 (5th Cir. 1949) .........24

*Nigh v. Koons Buick Pontiac GMC*, 478 F.3d 183 (4th Cir. 2007) ....38

*Noel v. Artson*, 641 F.3d 580 (4th Cir. 2011) ......................................19

*Quesinberry v. Life Ins. Co.*, 987 F.2d 1017 (4th Cir. 1993)...............27

*Robinson v. Equifax Info. Servs., LLC,* 560 F.3d 235
(4th Cir. 2009)......................................................................................31

*Rodgers v. United States*, 332 U.S. 371 (1947)................27, 28, 29, 30

*Socony Mobil Oil Co. v. Texas Coastal and International, Inc.*,
559 F.2d 1008 (5th Cir.1977) ..............................................................27

*Spell v. McDaniel*, 824 F.2d 1380 (4th Cir. 1987) .............................20

*Thomas v. Am. Serv. Fin. Corp.*, 966 F. Supp. 2d 82
(E.D.N.Y. 2013)....................................................................................29

*U.S. v. Banks,* 482 F.3d 733 (4th Cir. 2007)......................................11

*US v. Caro,* 965 F.2d 1548 (10th Cir. 1992) .......................................22

*US v. Clark,* 541 F.2d 1016 (4th Cir. 1976) ........................................24

*United States v. Lighty*, 616 F.3d 321 (4th Cir. 2010).........................20

*U.S. v. Washington,* 743 F.3d 938 (4th Cir. 2014) .............................20

*U.S. v. Weaver,* 282 F.3d 302(4th Cir. 2002) .....................................17

*U.S. v. Whitfield,* 715 F.2d 145 (4th Cir. 1983)...................................17

*Wheeler v. John Deere, Co.,* 862 F.2d 1404 (10th Cir. 1988).............22

*Young Design, Inc. v. Teletronics Int'l, Inc.*, 38 Fed. Appx. 994,
2002 U.S. App. LEXIS 14570 (4th Cir. Va. 2002) .............................31


## State Statutes

*Virginia Code §17-223* ...........................................................................21

*Virginia Code §55-106.2* .......................................................................21

*Virginia Code §55-516(I)(1)*..................................................................21


## Federal Statutes

15 U.S.C. § 1692k........................................................................... 13, 28

## Rules

Fed.R.Civ.P. 8...........................................................................24, 25

Fed.R.Civ.P. 8(a)(2)..................................................................24, 25

Fed.R.Civ.P. 8(b)(1) .................................................................24, 25

Fed.R.Civ.P. 50..........................................................................6, 13

Fed.R.Civ.P. 61 .......................................................................10, 11

Fed.R.Civ.P. 68 .............................................................................25

Fed.R.Civ.P. 68(d) ...............................................................30, 35, 36

## I.   STATEMENT OF CASE AND FACTS

Gordon and Janet Beasley own a home located in Dumfries, Virginia. Upon purchasing their home, they became obligated to pay monthly assessments to the homeowners association in accordance with the governing documents of the Association. (J.A. 264.) The Association provided coupon books to the Beasleys to facilitate this process and the coupons noted that payment was due on the 1st of every month and was considered late if not received by the 15th of the month. (J.A. 272.)

In 2008, shortly following the purchase of their home, the Beasleys' account became delinquent. (J.A. 264 - 65.) The Association's management company, Armstrong Management, hired Rees Broome to conduct collection efforts. (J.A. 345.) Rees Broome carried out collection activities from 2008 to 2012. During that time, Rees Broome sent the Beasley's letters indicating that the account was delinquent. (J.A. 532 – 33; 535 – 36; 540 – 43; 544 – 46; 548 – 553.) The "re" line of the letters stated "Notice of Intent to Record Lien." (J.A. 266.) At no point from the purchase of the Beasleys' home was their account balance brought to zero. (J.A. 353.) In 2009, the Association cut off the Beasleys' community benefits, including use of the pool, due to their failure to pay their assessments. (J.A. 267.)

In January 2012, the Association transferred the collection account from Rees Broome to Red Rock Financial Services, LLC ("Red Rock"). (J.A. 353.) The first communication that the Beasleys received from Red Rock was in January or February 2012. (J.A. 270 – 71.) The Beasleys did not call Red Rock or the Association to inquire regarding the contents of the delinquency notice or to attempt to bring the account up to date. (J.A. 271 - 72; 291.) Rather, Janet Beasley took the letter to her attorney, Ernest Francis. (J.A. 272.) Mr. Francis contacted Red Rock by letter dated February 24, 2012, (J.A. 72 – 73), identified himself as counsel for the Beasleys, and requested verification of the debt. In response, Red Rock sent a letter to Mr. Francis verifying the debt. (J.A. 456.) On May 25, 2012, Red Rock recorded a lien on the Beasleys' property and provided the Beasleys with notice of the same (J.A. 459 -- 60.) The Beasleys alleged that they suffered emotional damage because of the activities of Red Rock. (J.A. 36, ¶ 66; J.A. 66, ¶ 66.) However, Janet Beasley had allegedly suffered from sleepless nights since 2008 -- long before Red Rock was involved in the case or sent any communications to the Beasleys. (J.A. 275.) Janet Beasley's behavior was consistent since at least 2010, according to her husband. (J.A. 292.) Notably, the Beasleys experienced several stressors in their life in 2012 and 2013, including the hospitalization of their daughter, the death of a parent, and the federal government sequester. (J.A. 276.) Despite the existence of these other factors, the Beasleys

2

did not seek treatment with a physician or counselor for the alleged emotional distress purportedly caused by Red Rock or any other factor in their lives. (J.A. 276 – 77; 293.)  Mr. Beasley conceded that the entire matter could have been resolved with the stroke of a pen and that he filed his lawsuit to support his wife. (J.A. 295.)

Despite four years of delinquency notices and notices of intent to record a lien from Rees Broome, Janet Beasley continued to write her monthly assessment checks on the 9th or 10th of each month, knowing that she could receive a late fee from the Association when payments did not arrive by the 15th, and she also sent the checks to the wrong address.  (J.A. 273- 74; 356.)

Despite Mrs. Beasley's claimed embarrassment regarding the lien, no one has asked her about the lien and the lien has had no impact on her security clearance and no foreclosure was ever conducted on the property.  (J.A. 275 – 76; 294.)  The account has been placed on hold.  (J.A. 362.)

## II.    **PROCEDURAL/SETTLEMENT NEGOTIATION HISTORY**

Plaintiffs in this case each filed a complaint with the Circuit Court of Fairfax County, Virginia.  Janet Beasley initially filed her claim on July 13, 2012. Following the filing of the state court action, Red Rock offered to settle Janet Beasley's suit for $1,001.00, waiver of approximately $1,000.00 in HOA attorney's fees, and $500.00 in costs and attorney's fees.  (J.A. 655).  Janet Beasley

3

rejected the settlement offer and instead demanded $50,000.00 in damages plus attorney's fees.  (J.A. 655 – 57.)  The Defendant subsequently removed Janet Beasley's case to the United States District Court for the Eastern District of Virginia on November 15, 2012.

On January 23, 2013, Gordon Beasley filed his identical lawsuit in the Circuit Court of Fairfax County despite the fact that his wife's suit was pending in the Eastern District.  Defendant filed responsive pleadings and removed Gordon Beasley's case to Federal Court.  Over the objection of the Plaintiffs, Red Rock moved to consolidate the identical actions.  The Court granted Red Rock's Motion to Consolidate.  The cases subsequently proceeded together.

In an effort to bring these matters to a close, Red Rock made an Offer of Judgment to each Plaintiff.  An offer was made to Janet Beasley on February 11, 2013, (J.A. 638 – 40), and an offer was made to Gordon Beasley on February 20, 2013.  (J.A. 641 – 43.)  These offers were identical and contained the following provisions:

1. Compensatory and statutory damages in the amount of $1,001.00;
2. Waiver of late fees, interest, collection costs and attorney's fees (excluding assessments owed by Janet and Gordon Beasley to Princeton Woods Addition Homeowners Association) in association with the collection of the underlying debt owed by Janet and Gordon Beasley to Princeton Woods Addition Homeowners Association;
3. Release of the lien on Janet and Gordon Beasley's property;

4

    4.      Reasonable attorney's fees, litigation expenses and costs
              incurred by Plaintiff in relation to this case, through the date of
              this offer, in an amount to be determined by the Court.

Appellants responded to neither of the offers. On February 22, 2013, Red Rock offered to settle the Beasley's claims for $1001.00 to each, plus full payment of outstanding HOA fees, $7,500.00 in attorney's fees, and assistance to remove the lien from the Beasley's property. (J.A. 659-60.) Rather than accept the offers of judgment or settle the claim, the Beasleys continued to litigate the action.

Throughout the course of the litigation, Plaintiffs' counsel filed a variety of motions escalating the cost of the litigation to all parties. These motions included a motion to strike Defendants' Defenses (J. Beasley Dkt. No. 3.), a Motion to Compel the Corporate Deposition in Virginia (J. Beasley Dkt. No. 24) and a Motion to Extend the Appeal Period (J. Beasley Dkt. No. 89). Plaintiff Gordon Beasley also insisted on pursuing a frivolous claim for damages relating to a purported heart condition which, in itself, resulted in the filing and argument of numerous motions (G. Beasley Dkt. No. 17, 23, 35). Notably, counsel for Mr. Beasley refused to sign an order relating to expert deadlines and attempted to block the discovery of relevant medical records by filing a motion to quash. Records revealed no causal connection between Mr. Beasley's heart condition and any action by Red Rock. Red Rock filed a motion to exclude. Plaintiff filed a motion

to take the deposition of his doctor. The motion was granted and then withdrawn by Plaintiffs' counsel at the end of the hearing.

On March 1, 2013, the Beasleys made a settlement demand to Red Rock for $125,000.00, but only if the settlement was agreed to that day before 9:00 p.m. The Beasleys threatened that the demand would continue to escalate by $25,000.00 per week until accepted. (J.A. 662.)

On March 15, 2013, Red Rock filed Stipulations with the Court (Doc. 39.) In the Stipulations, Red Rock stipulated to violating the Fair Debt Collections Practices Act and stipulated to statutory damages in the Amount of $1,000.00 for each Plaintiff. (J.A. 108.) Four days later, the Beasleys filed what they termed an "offer to accept judgment" in the amount of $87,500.00 each. (J.A. 665 – 68.)

The parties continued to prepare for trial and on April 8, 2013, Red Rock, by counsel, wrote to the Beasleys' counsel and offered $10,000.00 in full and final settlement of the Beasleys' claims. The offer was rejected. The Beasleys counter-demanded for $12,000.00 and $30,000.00 in attorney's fees. The case proceeded to trial the following day. (J.A. 704.)

At the close of Plaintiffs' case, Red Rock moved for judgment pursuant to Rule 50 of the Federal Rules of Civil Procedure. The Court took the matter under advisement and deferred ruling until the close of all evidence. At that point, the

Court granted the Rule 50 Motion with respect to Counts I through X.  Count XI went to the jury.  (J.A. 404.)

The jury returned a verdict in favor of Red Rock and awarded no damages to Plaintiffs.  (J.A. 580 – 82.)  Judgment was entered by the District Court and an Amended Judgment was entered on April 11, 2013.  Following the trial, the Beasleys filed a Motion for Attorney's Fees requesting $52,120.00 in fees and $220.00 in costs.  Red Rock opposed the motion and the District Court heard oral argument on May 17, 2013.  On August 9, 2013, the Court ruled and awarded the Beasleys $5,000.00 in fees and $252.00 in costs.  (J.A. 727.)  A judgment in the amount of $5,252.00 was entered on August 9, 2013.  (J.A. 730.)  Plaintiffs subsequently noted this appeal.

## III.  <u>SUMMARY OF ARGUMENT</u>

The Beasleys argue that the District Court erred in granting the Judgment as a Matter of Law on Counts III, IV and VII of their respective Complaints; that a witness was allowed to testify with respect to the moneys owed by Plaintiffs; that the court permitted the use of certain jury instructions and denied others; and that the District Court awarded only $5,252.00 in attorney's fees and costs.  None of these rulings constitute reversible error and the judgments of the District Court should be affirmed.

7

First, the ruling with respect to the Motion for Judgment was proper. The Beasleys filed Complaints alleging eleven separate causes of action under the Fair Debt Collections Practices Act. Prior to trial, Red Rock stipulated to violating the Act and stipulated to statutory damages in the amount of $1,000.00 for each Plaintiff. At the close of all of the evidence, the District Court granted Red Rock's Rule 50 Motion on Counts I – X. This ruling was correct in light of the Plaintiffs' failure to prove that a particular violation was the proximate cause of their claimed emotional distress. The stipulation provided by Red Rock did not absolve the Beasleys of their burden of proof establishing that a particular violation caused their alleged emotional distress.

Moreover, whether one or all eleven counts went to the jury, the jury was ultimately asked only whether the Plaintiffs suffered actual damages and was not tasked with determining liability. The Verdict Form merely inquired whether "over and above the statutory damages stipulated to above, do you find that Plaintiff Janet[/Gordon] Beasley sustained actual damages as a result of defendant's violation of the Fair Debt Collection Practices Act?" The Jury responded – "No." Plaintiffs were provided ample opportunity to put on their case with respect to damages. The jury determined that they had no actual damages. To the extent that this Court finds any of the appealed rulings with respect to

8

liability to be in error, none of the rulings constitute reversible error, particularly in light of the limited question posed to the jury.

Second, the District Court's rulings with respect to the admission of evidence do not constitute reversible error. The Beasleys take a myopic approach to the presentation of this evidence by arguing that the evidence is contrary to the stipulation. Nevertheless, even if this argument were persuasive, the evidence is admissible for other purposes. Notably, the evidence addressed Plaintiffs' claimed damages of emotional distress by highlighting the long running history of collection efforts and undermining any contention that Plaintiffs' emotional distress was purportedly the result of violations of the FDCPA by Red Rock. The evidence was also used to refute Plaintiffs' testimony that they were shocked and surprised. The admission of this evidence falls far short of an abuse of discretion by the trial court and fails to affect the substantial rights of the Plaintiffs as they, themselves, provided significant testimony regarding the same facts. Error, if any, would be, by definition, harmless.

Third, the Beasleys' challenges to jury instructions offered and not offered by the District Court are without merit. Viewing the instructions holistically through the abuse of discretion standard, the jury was adequately informed of the controlling legal principles. Moreover, the Beasleys' arguments with respect to issues of liability on the jury instructions, are misplaced. At the end of the trial, the

9

jury was only asked whether the Beasleys sustained any actual damages as a result of the defendant's violation of the Fair Debt Collection Practices Act.  In light of this limited question and the fact that the jury was not asked to determine liability, any error with respect to the remaining jury instructions would be harmless.

Finally, applying the proper legal principles, the District Court awarded the Appellants a reasonable attorney fee after reducing Appellants' fee claim consistent with the degree of success they attained and their numerous unsuccessful claims.  At various points in the litigation, Appellants were offered more than they eventually recovered; nonetheless, they continued to litigate legally and factually unsupported claims in order to recover a larger attorney-fee award.

For the reasons set forth herein, Red Rock respectfully requests this Court to affirm the judgments of the District Court.

## IV.    <u>ARGUMENT</u>

### A.    <u>The District Court Did Not Err in its Rulings and Any Error was Harmless</u>

Federal Rule of Civil Procedure 61 only permits the decision of the District Court to be overturned when a party's substantial rights are affected.  Rule 61 states: "[u]nless justice requires otherwise, no error in admitting or excluding evidence--or any other error by the court or a party--is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing

a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Only errors that affect the substantial rights of the parties provide grounds to reverse, Fed.R.Civ.P. 61. Appellants bear the burden of demonstrating interference with their substantial rights. *See, e.g., Howard v. Gonzalez*, 658 F.2d 352, 357 (5th Cir.1981). This Court has stated that "[i]n order to find a district court's error harmless, we need only be able to say with fair assurance, after pondering all that has happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by error." *U.S. v. Banks,* 482 F.3d 733, 741 – 42 (4th Cir. 2007).

In the trial of this matter, no purported error by the District Court affected the Beasleys' substantial rights. At the conclusion of the presentation of all of the evidence, the District Court instructed the jury that the "defendant has agreed that it violated the Fair Debt Collections Practices Act ("the Act") and that because of that violation each plaintiff is entitled to receive the amount of $1,000. . . ." (J.A. 569). The verdict form further acknowledged the award of statutory damages and included special interrogatories which stated "Over and above the statutory damages stipulated to above, do you find that Plaintiff Janet/Gordon Beasley sustained actual damages as a result of defendant's violation of the Fair Debt Collections Practices Act?" (J.A. 580 – 81.) The only question presented to the

11

jury was whether Plaintiffs suffered actual damages as a result of Red Rock's violation of the Act. Thus the Beasleys' arguments with respect to the District Court's rulings on liability do not impact their substantial rights. Even if this Court were to find error in any of the rulings appealed by the Beasleys, the error would be harmless and would not merit remanding the case to the District Court.

### B. The Trial Court did not Err in Granting the Motion for Judgment as a Matter of Law

A motion for a directed verdict may be defeated, and an issue submitted to a jury, only when that issue "is supported by substantial evidence which shows a probability and not a mere possibility of proof." *Bailey v. Cnty. of Georgetown*, 94 F.3d 152, 156 (4th Cir. 1996)) (citing *Eastern Auto Distrib. v. Peugeot Motors of Am.*, 795 F.2d 329, 335 (4th Cir. 1986)). In viewing the evidence in the light most favorable to the Beasleys, there could be only "one reasonable conclusion as to the verdict" under the applicable law. *Alevromagiros v. Hechinger Co., 993 F.2d 417, 420 (4th Cir. 1993)* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)).

### 1.    The stipulation did not relieve Plaintiffs of the burden of establishing that a violation of the Act caused their alleged damages.

In the instant case, granting the Rule 50(a) motion was appropriate due to Plaintiff's failure to demonstrate a causal connection between the alleged false statements and any purported actual damages suffered by Plaintiffs.

Whether or not Plaintiffs were required to prove a violation of the Act in light of the stipulation, Plaintiffs were still required to prove damages as a result of a violation. While Red Rock stipulated to violating the Act, Red Rock did not stipulate to every fact alleged in the Complaints as Plaintiffs suggest. Plaintiffs' arguments comparing the stipulation to a default judgment are inapplicable to the circumstances presented here. Parties may stipulate to specific aspects of the case much like an admission. However, a stipulation as to violating the Act does not concede the entire case. Notably, Red Rock did not stipulate that Plaintiffs suffered any actual damages or the cause of their purported damages.

### 2.    The Beasleys had the burden of showing that any violations of the Act by Red Rock were the proximate cause of their purported damages.

The Fair Debt Collection Practices Act permits the recovery of actual damages by any person who sustains actual damages "as a result of . . . " a debt collector's failure to comply with the provisions of the Act. 15 U.S.C. § 1692k. As in any cause of action, the plaintiff bears the burden of proving that the

damages claimed are a result of the claimed wrongful act and not the result of some other cause. The burden of proving causation of damages is the plaintiff's alone and never shifts to the defendant. *Garrett v. Trans Union, LLC,* 2006 U.S. Dist. LEXIS 73395, *33 n.5 (S.D. Oh. 2006) (citing *Enwonwu v. Trans Union, LLC,* 364 F. Supp. 2d 1361(M.D. Ga. 2005)).

Plaintiffs agreed with this burden when they agreed to the presentation of Jury Instruction No. 8. (J.A. 203). Jury Instruction No. 8 provides, *inter alia*, that

> Plaintiffs Janet and Gordon Beasley must prove that any damages incurred were caused by acts or omissions of defendant Red Rock Financial Services, LLC that were not in compliance with the Fair Debt Collections Practices Act. Even if you find that the plaintiffs Janet and Gordon Beasley were damaged, if you find that the damage was not the result of defendant Red Rock Financial Services, LLC's noncompliance with the Fair Debt collection Practices Act, you must find for the defendant Red Rock Financial Services, LLC.

Likewise, Plaintiffs did not object to Instruction No. 15 – Damages. (J.A. 572.) Instruction 15 specifically states that the jury "must determine whether a plaintiff suffered damages as a result of Defendant's violation of the Act, and if so the amount of money that reasonably, fairly, and adequately compensates that plaintiff for the damage you decide resulted from defendant's violation of the Act." (J.A. 572.) The instruction further provides:

14

> In determining whether a plaintiff sustained actual damages as a result of defendant's violation of the Act, you must determine whether defendant's violation of the Act was a proximate cause of any actual damages. A proximate cause of an injury or damage is a cause which in natural and continuous sequence produces the injury or damage. It is a cause without which the injury or damage would not have occurred.

The Beasleys failed to present evidence beyond mere speculation that they suffered any damages that were a proximate result of violations of the Act committed by Red Rock. The evidence presented at trial indicated a long running history of a delinquent account, receiving letters from another collection firm and the HOA, (J.A. 532 – 553), and a history of preexisting "emotional distress" factors which Plaintiffs then attempted to assign blame against Red Rock. (J.A. 276.) Gordon Beasley testified that Janet Beasley had been experiencing sleepless nights and crying since 2010 – long before Red Rock started its collection efforts. (J.A. 292.) No testimony was provided with respect to the statements in the delinquency letters and how they allegedly caused any damage to the Beasleys. Judge Trenga noted that the Beasleys failed to present "sufficient evidence to take out of the realm of speculation that [they] have suffered any damages or any actual damage that is attributable specifically to a violation[.]" (J.A. 380.) As Judge Trenga stated from the bench

> here you have this undifferentiated mass of evidence that the Beasleys were upset since 2008 over this dispute with

15

> the homeowners' association and what they thought were improper assessments, that they were upset with the letters they were getting from Rees Broome. They then were upset with the filing of the lien.

(J.A. 384 – 85.)

The Beasleys thus failed to establish a violation in Counts III, IV and VII that proximately caused their alleged emotional distress.

### 3. Apportionment of damages is not applicable to this case.

The Beasleys argue that because damages may have resulted from other parties, the rules of apportionment should be applied to this case. However, apportionment of damages is not applicable to this case. The Supreme Court has stated that there is no apportionment of comparative fault where there is an absence of proximate causation. *Exxon Co. v. Sofec*, 517 U.S. 830, 832 (1996). In this case, the Beasleys have altogether failed to demonstrate that any actions by Red Rock were the proximate cause of their alleged damages. Thus, any arguments with respect to apportionment are misplaced.

### C. The District Court's Admission of Evidence by Defendant Does Not Constitute Reversible Error.

The Beasley's argue that the District Court erred by permitting the testimony of Cindy Weiss and the admission of Defendant's Exhibit 1. The Beasleys contend that the Defendant's Exhibit 1 is contrary to the stipulation and hearsay and that

the exhibit as well as the testimony of Ms. Weiss was contrary to the stipulation. The Beasleys' assessment of the evidence is a myopic approach and fails to demonstrate an abuse of discretion that would result in reversible error.

As noted in the Appellants' Brief, the applicable standard of review is the abuse of discretion standard. An abuse of discretion will not be found unless the district court's "decision to admit evidence . . . was arbitrary and irrational." *U.S. v. Weaver,* 282 F.3d 302, 313 (4th Cir. 2002).

Even in instances where a stipulation exists, evidence may be admitted for other purposes. *U.S. v. Whitfield,* 715 F.2d 145 (4th Cir. 1983). For example, in *U.S. v. Whitfield*, the parties had stipulated to the victim's cause of death as "bludgeoned to death with a blunt instrument." *Id.* The district court admitted photographs over the defendant's objection as the photographs were introduced by the government to connect the wounds to the weapon. *Id.* The appellant argued that the stipulation distinguished his case from others and precluded the use of the photographs. This Court concluded "this is a distinction without a difference in this case because the concern lies with abuse of discretion by the trial court" and concluded it was not an abuse of discretion to allow the evidence for another purpose despite the stipulation. *Id* at 147 – 48.

In the instant case, Defendant presented evidence through the transaction report and Cindy Weiss regarding the Beasleys long-running delinquency history.

17

This evidence was neither precluded by the stipulation nor the hearsay rules. The Beasleys contend that this information is only relevant to proving the amount of the debt. However, this is a myopic approach to the evidence. The evidence was relevant to proving or disproving the proximate cause of the Beasleys' claimed damages and was not limited to the amount of the debt. The testimony presented by Cindy Weiss and the transaction report reflected a long-running delinquency history originating in 2008 and the Beasleys' complete disregard of bringing their account current or making timely payment even under their claimed emotional duress. Ms. Weiss testified that the Beasleys never contacted her, (J.A. 353), continued to make payments in an untimely manner, (J.A. 348), and misdirected the payments. (J.A. 356.) The evidence was also used to refute the testimony of the Beasleys that they were shocked and in disbelief that Red Rock would send them letters and file a lien. (J.A. 251; 283.) In light of the circumstances, the admission of this evidence falls far short of an abuse of discretion.

Even if this Court were to determine that error could be found, the error would be harmless in light of the extensive evidence, brought out in Plaintiffs' own testimony, surrounding the Beasleys' delinquency and interactions with Rees Broom and the Homeowners' Association prior to Red Rock's involvement. Thus, the admission of Defendant's Exhibit 1 and the testimony of Cindy Weiss was not in error.

18

**D.**    **The Beasley's Challenge to Jury Instructions Cannot Support Reversible Error**

The Beasleys seek to reverse the judgment of the District Court by attacking two of the instructions provided (Nos. 14 and 16) and by arguing that the District Court erred in failing to provide Plaintiff's proposed instruction "R" on prejudgment interest. Reviewed through the applicable standards of review with respect to jury instructions, the District Court made no error in its rulings. Even if error were found, any error would be harmless and therefore an insufficient basis to overturn the judgment.

Review of jury instructions is through the abuse of discretion standard and the district court is afforded substantial discretion in fashioning the charge. Generally, jury instructions are reviewed "holistically and through the prism of the abuse of discretion standard." *Fussman v. Novartis Pharms. Corp.,* 509 Fed. Appx. 215, 222 (4th Cir. 2013) (citing *Noel v. Artson*, 641 F.3d 580, 586 (4th Cir. 2011). This Court has stated that its role is to "simply determine 'whether the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party.'" *Id.* (quoting *Bailey v. Cnty. of Georgetown*, 94 F.3d 152, 156 (4th Cir. 1996)). The instructions are not tested on technical accuracy in every detail. *Bailey v. Cnty of Georgetown,* 94 F.3d

19

152, 156 (4th Cir. 1996) (citing *Spell v. McDaniel*, 824 F.2d 1380, 1395 (4th Cir.

1987)*, cert. denied*, 484 U.S. 1027, 98 L. Ed. 2d 765, 108 S. Ct. 752 (1988)).

Decisions not to provide an instruction are reversed "only when the

requested instruction "(1) was correct; (2) was not substantially covered by the

court's charge to the jury; and (3) dealt with some point in the trial so important,

that failure to give the requested instruction seriously impaired' that party's ability

to make its case." *Id.* (quoting *United States v. Lighty*, 616 F.3d 321, 366 (4th Cir.

2010)). *Fussman v. Novartis Pharms. Corp.,* 509 Fed. Appx. 215, 222 (4th Cir.

2013). The District Court's decisions to offer certain instructions are afforded

significant discretion and will only be overturned. Jury instructions are only

reviewed *de novo* when the challenging party contends that the instructions fail to

correctly state the law. *U.S. v. Washington,* 743 F.3d 938, 941 (4th Cir. 2014).

### 1.    The Beasleys' challenge to Instruction No. 14's statement of the law is not reversible error.

The Beasley's attack Jury Instruction No. 14 on the grounds that the jury

instruction fails to correctly state the law. The Beasleys contend that because the

memorandum of lien was not under oath, the portion of the instruction which states

that the Association "may legally institute foreclosure proceedings based on this

filed lien, even though Plaintiff's may have defenses that would prevent such

foreclosure proceedings from resulting in the sale of the plaintiffs' property" is

incorrect and therefore constitutes reversible error.  The Beasley's argument is flawed.  Notably, Virginia Code Section 55-516(I)(1) specifically notes that the Association should notify the lot owner that they have a "right to bring a court action in the circuit court of the county or city where the lot is located to assert the nonexistence of a debt or any other defense of the lot owner to the sale."  Thus, the instruction correctly notes that foreclosure proceedings may be instituted but the Beasleys may have defenses that may be raised to those proceedings.  While the statute does permit non-judicial foreclosures, this does not leave an owner defenseless as the Beasleys suggest.

Moreover, should this Court delve into the legality and form of the lien as opposed to the question of whether an act may be lawfully taken, it is worth noting that Virginia Statutes would validate the lien once it was recorded.[1]  Specifically, Virginia Code § 55-106.2 states that "all writings admitted to record shall be presumed to be in proper form for recording after having been recorded[.]"  The Virginia Code further provides in § 17-223 that any deed or writing which is "accepted for record and spread on the deed books" is deemed to be "validly recorded for all purposes."  Va. Code. Section 17-223.  Thus, once the lien was recorded, it was deemed valid for all purposes including foreclosure proceedings.

---

[1] It is worth noting that the Beasleys' counsel concedes that the filing of the lien itself is not a violation of the Act.  (J.A. 176.)

Despite the Beasleys' arguments to the contrary, the offered jury instruction was not incorrect and a foreclosure could be carried out. Whether or not the Beasleys had a defense or remedy to the foreclosure is a distinct question.

### 2. The District Court did not err in offering the *bona fide* error defense.

The Beasleys argue that the one sentence in Jury Instruction No. 16 providing the *bona fide* error defense justifies reversal of the District Court's judgment. This argument is without merit. As noted above, jury instructions are reviewed on an abuse of discretion standard. Courts have held that that an erroneous jury instruction will only require reversal if it is determined that providing the instruction was prejudicial. *US v. Caro,* 965 F.2d 1548, 1555 (10th Cir. 1992). The determination is made from the perspective of the jury and the courts consider not whether the charge is faultless but whether the jury was misled in any way. *Id.* "The instructions as a whole need only convey a correct statement of the applicable law." *Wheeler v. John Deere, Co.*, 862 F.2d 1404, 1411-12 (10th Cir. 1988).

In the instant case, Instruction No. 16 is an accurate statement of the law. Considering the body of instructions provided by the district court, the jury could not have been misled. Instruction No. 16 is an instruction relating to acts not in violation of the statute, defenses and limits on damages. The single sentence

22

addressing the *bona fide* error defense states, "a debt collector such as the defendant, may not be held liable for a violation of the Act if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." (J.A. 573 – 74.) The jury would thus understand that the defendant has the burden to prove this defense. Moreover, it is noteworthy that the verdict form in the case does not ask the jury to make a determination as to whether Red Rock violated the Act. (J.A. 580 – 82.) Special Interrogatories 1 and 3 state "Over and above the statutory damages stipulated to above, do you find that Plaintiff [Janet/Gordon] Beasley sustained actual damages as a result of defendant's violation of the Fair Debt Collections Practices Act." (J.A. 580 – 81.) In each instance, the jury determined that they did not.

The Beasleys seek to alter the standard of review by arguing that there was no evidence to support this instruction therefore there is not sufficient evidence and this Court should review the question *de novo* and cite to an opinion addressing a judgment as a matter of law. In further support of their argument to seek a reversal, the Beasleys argue that the Defendant's stipulation precludes the application of the *bona fide* error defense. Nevertheless, the stipulation that the defendant provided merely states that the "Defendant stipulates to violating the

Fair Debt Collections Practices Act." (J.A. 108.) The stipulation is not an admission to every fact in Plaintiffs' Complaints.

The Beasleys' attempt to bootstrap their argument with respect to the *bona fide* error defense to an argument that the District Court erred in failing to grant plaintiff Janet Beasley's Motion to Strike the Defendant's Defenses. This argument in itself does not support reversible error. *Mims v. Cent. Mfrs. Mut. Ins. Co.,* 178 F.2d 56, 59 (5th Cir. 1949). Moreover, the Motion should be renewed at trial. *U.S. v. Clark,* 541 F.2d 1016, 1018 (4th Cir. 1976).

In the instant case, Janet Beasley did not renew her Motion to Strike at trial and Gordon Beasley had no motion to renew as one was never filed on his behalf. Thus, the Motion to Strike Defenses should not be considered at this juncture.

Even if this Court were to consider the District Court's ruling on Janet Beasley's Motion to Strike, the Appellants' argument is not persuasive. Rule 8 of the Federal Rules of Civil Procedure governs the general rules of pleading. Rule 8(a)(2) sets forth the requirements of a "Claim for Relief," and Rule 8(b)(1)(A) sets for the requirements for pleading defenses. Specifically, Rule 8(a)(2) states that a claim for relief must contain a "short plain statement of the claim *showing that the pleader is entitled to relief[.]*" (emphasis added). Rule 8(b)(1)(A) requires that a party must "state in short and plain terms its defenses to each claim asserted against it[.]" These provisions are distinct and impose different

requirements on the parties. *Lopez v. Asmar's Mediterranean Food, Inc.,* 2011 U.S. Dist. LEXIS 2265, * 6-7 (E.D. Va. 2011).[2]  The provision relating to defenses does not contain language requiring the party to show they are entitled to relief. *Id.* A party asserting an affirmative defense need only state the defense in short and plain terms according to the rule. *See Clem v. Cobreau,* 98 Fed. Appx. 197, 203 (4th Cir. 2004); *Lawrence v. Chabot,* 182. Fed. Appx. 442, 456 (6th Cir. 2006). The Beasleys seek to apply the heightened pleading requirements of *Iqbal*  and *Twombly* to Rule 8(b)(1).  However, the Supreme Court in those cases only analyzed and applied the language of Rule 8(a)(2) and neither addressed Rule 8(b)(1)(A) or the language differences between these provisions. *See generally, Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 667 – 680 (2009).

In the instant case, Red Rock has satisfied its pleading requirements.  The Answer to the Complaints states that "[a]ny violation of the Fair Debt Collections Practices Act was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid any such error."  (J.A. 90 & 99.)  The mere fact that the defense includes the language in the statute does not render the defense ineffectual.  As stated in the Answers, the

---

[2] A review of the case law revealed no decisions from this Circuit on this matter.

defense clearly places Plaintiffs on notice that any errors were the result of a mistake and that Defendant has procedures in place to prevent such mistakes.

Plaintiff sought to use the Motion to Strike as a tool to require Defendant to concede error in order to assert the affirmative defense. Plaintiff Janet Beasley demanded that Defendant identify the specific error and the specific procedure. While the pleading requirements of Rule 8 necessitate informing Plaintiff of the nature of the defense, they should not be used as a tool to absolve Plaintiff of her affirmative duty to prove her case. Finally, there was no prejudice resulting to Plaintiffs as a result of the ruling on the Motion to Strike. Plaintiffs had ample opportunity to explore the *bona fide* error defense through discovery. Had Plaintiffs' counsel disagreed with the assessment of the need to proceed with various depositions, the discovery could have been conducted. Ultimately, counsel chose not to pursue the discovery available to the Beasleys.

### 3. The District Court's decision to preclude the instruction on pre-judgment interest was not in error.

Finally, the Beasleys argue that the District Court's failure to provide a jury instruction on pre-judgment interest on statutory damages was in error. However, this is a decision that falls squarely in the discretion of the trial court and is not appropriate on an award of statutory damages under the FDCPA.

26

When a federal statutory scheme does not specifically provide for or prohibit the award of pre-judgment interest, the decision whether to award pre-judgment interest is left to the discretion of the trial court. *Quesinberry v. Life Ins. Co.*, 987 F.2d 1017, 1030-31 (4th Cir. 1993). This exercise of discretion should take into account the relative equities between the parties and the legislative purpose underlying a given Act to determine whether the Act's purpose would be served by awarding prejudgment interest. *See Rodgers v. United States*, 332 U.S. 371, 373 (1947). Prejudgment interest is not granted "according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness." *Blau v. Lehman*, 368 U.S. 403, 414 (1962) (*quoting Board of County Commissioners v. United States*, 308 U.S. 343, 352(1939)); see *Huddleston v. Herman & MacLean*, 640 F.2d 534, 560 (5th Cir. 1981), *aff'd in part and rev'd in part on other grounds*, 459 U.S. 375 (1983). It is not awarded as a penalty, but as compensation for the use of funds. *Socony Mobil Oil Co. v. Texas Coastal and International, Inc.*, 559 F.2d 1008, 1014 (5th Cir.1977), *cert. denied*, 434 U.S. 855 (1977).

In *Rodgers*, the United States Supreme Court explained the purpose of prejudgment interest and how that purpose differs from the deterrent function of a fine or statutory penalty. In that case, the Agricultural Adjustment Act imposed penalties against farmers who sold more cotton than statutory quotas permitted.

27

*Rodgers,* 332 U.S. at 372.  At the trial court level a farmer was found to have violated that Act, penalties were imposed, and prejudgment interest was awarded on the penalties. *Id.*  The United States Supreme Court reversed the trial court, holding that awarding prejudgment interest against the penalty provision of that Act was inappropriate because statutory penalties are put in place to deter conduct rather than to recoup the time-loss value of a debt.[3]  The Court explained it had long been the practice of the federal courts not to apply prejudgment interest to criminal fines. *Id.*  Analogizing a criminal fine to a statutory penalty, the *Rodgers* Court extended the rule against applying prejudgment interest to the context of civil penalties.

Like the Agricultural Adjustment Act considered in *Rodgers*, the Fair Debt Collection Practices Act does not mandate or prohibit the award of pre-judgment interest for violations.  Pursuant to 15 U.S.C. § 1692k, a debt collector who fails to comply with the Act may be liable for actual damages attributable to the violation, an additional penalty not exceeding $1,000.00, costs, and reasonable attorney's fees as determined by the court.  Statutory damages under the Fair Debt Collection Practices Act have been construed as penalties by various federal courts.  *See*

---

[3]      The basic purpose of pre-judgment interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing. *First Federal Sav. & Loan Ass'n v. Chrysler Credit Corp.,* 981 F.2d 127, 135 (4th Cir. 1992).

28

*American Timber & Trading Co. v. First Nat'l Bank*, 690 F.2d 781 (9th Cir. 1982) (refusing to award prejudgment interest on a statutory penalty); *Thomas v. Am. Serv. Fin. Corp.*, 966 F. Supp. 2d 82, 2013 U.S. Dist. LEXIS 65073, 2013 WL 1898954 (E.D.N.Y. 2013); *Ayzelman v. Statewide Credit Servs. Corp.*, 242 F.R.D. 23, 2007 U.S. Dist. LEXIS 24287 (E.D.N.Y. 2007); *Manopla v. Bryant, Hodge & Assocs.*, LLC, 2014 U.S. Dist. LEXIS 24554 (D.N.J. Feb. 11, 2014).

Here, the trial court denied the Appellants' prejudgment interest after considering the evidence adduced at trial and considering the nature of the statutory penalty provision written into the FDCPA. During argument on Appellants' proposed jury instruction for pre-judgment interest, Judge Trenga denied the instruction stating that "prejudgment interest is not recoverable as to statutory damages. Those are more in the nature of penalties than compensatory damages." (J.A. 404.) Appellants cite to no authority to rebut the Court's determination, *Rodgers*, or numerous federal cases interpreting FDCPA statutory damages as penalties. The intent of the statutory penalty under the FDCPA is to deter various actions by debt collectors, making its purpose comparable to the penalty provisions of the Agricultural Adjustment Act considered in *Rodgers*. Judge Trenga appropriately used his discretion, applied the law, and denied the Appellants' instruction.

Furthermore, it should be noted that it was the Appellants who were responsible for any delay in receiving their statutory damages award. Appellants point to March 15, 2014, as the date they claim statutory damages should have been paid to them because the parties reached a stipulation as to Appellee's liability on that date; however, their position overlooks the fact that Appellee previously made two Rule 68 offers of judgment to Appellants which exceeded Appellants' ultimate recovery. (J.A. 638 – 643.) Both were ignored. Rather than accept the offers of judgment, the Appellants chose to prolong the litigation, go to trial, and delay their receipt of the statutory damages which Appellee consented to pay. As noted in *Rodgers* prejudgment interest is about weighing the equities involved in a particular case. Appellants are responsible for any delay in receiving payments. Appellants should not be permitted to profit from the collection of prejudgment interest by a situation of their own making.

### E.   The District Court's Ruling with respect to Attorney's Fees was Appropriate under the Circumstances of this Case.

Appellants complain that the district court abused its discretion by failing to award them more attorneys' fees. However, Appellants' arguments fail to demonstrate an abuse of discretion to merit a modification of the award. This Court has stated that "an abuse of discretion only arises if the district court's conclusions are based on mistaken legal principles or clearly erroneous factual

findings." *Young Design, Inc. v. Teletronics Int'l, Inc.*, 38 Fed. Appx. 994, 2002 U.S. App. LEXIS 14570 (4th Cir. Va. 2002).

In this case, the District Court neither based its conclusions on mistaken legal principles or clearly erroneous factual findings. The District Court awarded Plaintiffs $5,225.00 in attorneys' fees in a case in which Red Rock made multiple settlement offers, multiple offers of judgment, and ultimately stipulated that the Appellants were entitled to the statutory damages under the FDCPA. It would have taken minimal effort to resolve the case had that been the Appellants' intention. However, Appellants disregarded attempts to resolve their case on reasonable terms, obstructed the District Court's attempts to mediate the dispute, and ultimately advanced specious and unsuccessful damages claims in an effort to generate an attorney-fee windfall.

### 1.    Factors of fee analysis and discretionary assessment

The District Court's Order assessing attorneys' fees applies the proper method of review and applies the *Barber* factors in its analysis. *See Robinson v. Equifax Info. Servs.*, LLC, 560 F.3d 235, 243-44 (4th Cir. 2009) (*quoting Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). The Supreme Court has remarked that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 103 (1992) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 436.) Although the District

31

Court acknowledged and applied all of the *Barber* factors, it also acknowledged that the degree of success obtained was the most critical factor and it focused its analysis on that issue. (See Generally Order) (J.A. 721.)

Generally a district court will use the *Barber* factors to calculate a lodestar value to determine a reasonable attorney fee; however "[i]f a plaintiff has only partial or limited success, a reduction in the award of attorney's fees [under § 1692k] may be appropriate." *Id.* at 630 (*quoting Graziano v. Harrison*, 950 F.2d 107, 113-14 (3d Cir. 1991). District courts have broad discretion in determining fee awards because, as this Court has written, "the district court has a 'ringside view of the relevant conduct of the parties and of the underlying legal dispute.'" *Id.* at 628 (*quoting Alexander v. Mayor & Counsel of Cheverly, Md.*, 953 F.2d 160, 162 (4th Cir. 1992)). In a case such as this, where Red Rock made multiple reasonable attempts to resolve these claims and Appellants resisted merely to generate an excessive attorney fee award, those factors should be considered to adjust awarded attorneys' fees downward. The District Court appropriately concluded that Appellants minimal success justified a reduction of the award. (Order 9) (J.A. 726.)

**2.    The Court took a holistic view of the settlement negotiations between the parties and the Appellants' relative success as to each, not the limited view argued by Appellants**

Appellants' Brief mischaracterizes the District Court's Order, asserting that the court's assessment of the Appellants' success was based merely on a comparison between what Red Rock offered early on in the litigation as compared to what Appellants' ultimately recovered. (Appellants' Br. 45).  The court below engaged in a holistic analysis of settlement offers, the offers of judgment, and Appellants' response to attempts to resolve the claims pre-litigation in assessing Appellants' attorneys fee request.

> For the purposes of calculating a fee award, the Court has reviewed in detail Francis' billing statement and the amount of fees and expenses incurred at various points in time. In connection with this, the Court accepts as reasonable Francis' hourly rate of $300 and also the amount of time Francis expended on the particular tasks listed.  As required, however, the Court has calculated Plaintiffs' entitlement to statutory fees based on all the applicable considerations referenced above, but most centrally on the results obtained and the fees incurred at those points in time when any reasonable assessment of the merits of Plaintiffs' claims would have counseled in favor of accepting in settlement the maximum amount of statutory damages and thereby stopping litigation costs.

(J.A. 726 - 27.)  The District Court did not merely compare a $1,500 offer, which was incidentally made in August of 2012 when only the Janet Beasley suit was pending, with the $2,000.00 recovery by both Janet and Gordon Beasley to assess

33

Appellants' recovery as a limited success. The District Court stepped through numerous offers made by Red Rock throughout the litigation. (Order 5, n.3, J.A. 722.) Notably, the Court pointed to the settlement offer made by Red Rock on February 22, 2013, which offered "$1,001.00 to each plaintiff, plus full payment of all outstanding HOA fees, $7,500.00 in attorney's fees, and assistance to remove the lien from the plaintiff's property." Appellants' response to the offer was that they had decided "to discontinue our efforts to resolve these cases by settlement." (*Id.*). The day before trial, Red Rock made an offer of $10,000.00 (*Id.*). As the court noted, and predicated its ruling upon, at various times during the litigation, Appellants could have settled the case for more than their ultimate recovery. (J.A. 724.) Rather, they pursued claims with little factual or legal support.

Appellants' suits asserted eleven counts alleging various violations of the FDCPA. Counts I-X were dismissed for insufficient evidence. (J.A. 404 & 720.).[4] Only count XI was submitted to the jury and in response the jury rendered a verdict in favor of Red Rock. Then the District Court awarded Appellants' statutory damages consistent with Red Rock's prior stipulation to liability. Because Appellants failed in all but the conceded points, the court appropriately reduced the fee. *See Johnson v. City of Aiken*, 278 F.3d 333, 321 (4th Cir. 2002) ("Once the

---

[4] Notably, the Beasleys only contest the ruling on three of the counts in this appeal.

court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.")

### 3. Appellants' position misconceives the import of Red Rock's Offers of Judgment.

Appellants assert that they recovered more than Red Rock's offers of judgment and therefore the District Court mischaracterized their recovery as a limited success.  Unlike the District Court's analysis, Appellants are myopically focused on this one point.  The fact that the District Court did not rely upon the offers in isolation is underscored by the fact that the District Court did not charge the Appellants costs in accordance with Fed. R. Civ. Proc. 68(d); which it would have done if the District Court relied upon the offers alone.  Despite this Appellants contend that the District Court erred in relying upon the offers because the offers did not include the provision of attorneys' fees for litigating the attorneys' fee issue. (Appellants' Br. 45).  Appellants' argue that the Court did not consider recovery of those fees when it characterized the Appellants' recovery as a limited success.

The first defect in Appellants position is that it would require the District Court to engage in confusing, circular reasoning.  How is the court to consider the recovery of attorney's fees as an element of success in evaluating the level of

success of the litigation in order to determine the attorneys' fee to be awarded? Such a mode of reasoning is unworkable.

Second, Appellants Brief is devoid of any authority stating that a trial judge should consider attorneys' fees the judge eventually awards as an element of success. While the Beasleys point to several authorities regarding offers of judgment generally, none of them apply to the concept they are trying to persuade this Court to accept. This concept however, is considered and rejected in *Marek v. Chesny*, 473 U.S. 1, 7 (1984) (*superseded* by statute on other grounds) (finding that post offer costs, including attorney's fees, should not be considered in the calculus of success to award attorneys' fees). In *Marek*, the United States Supreme Court considered an argument similar to that asserted by Appellants here. In that case, the defendants made plaintiff's a pre-trial settlement offer of $100,000.00 which ultimately exceeded the damages awarded in the case. Attorneys' fees were the center piece of the litigation, and specifically, what portion of claimed fees should be awarded following a Rule 68 Offer of Judgment. Appellants there argued that their eventual recovery, $60,000.00 in damages, $32,000.00 in pre-offer fees costs, and $139,692.47 in claimed post-offer fees and costs, exceeded the prior settlement offer of $100,000.00. However the court disagreed, specifically holding that post-offer costs/fees should not have been considered in the comparison between what was offered and ultimately recovered. *Id.* at 7.

36

Third, even if the Court were to agree that attorneys' fees play into the success calculus, Appellants have not presented sufficient facts either here or at the trial court level to substantiate their assertion that they ultimately recovered more pursuant to the litigation than they would have under the defendants' offers of judgment. Red Rock made each of the Plaintiffs an offer of judgment which contained the following provisions:

1. Compensatory and statutory damages in the amount of $1,001.00;
2. Waiver of late fees, interest, collection costs and attorney's fees (excluding assessments owed by Janet and Gordon Beasley to Princeton Woods Addition Homeowners Association) in association with the collection of the underlying debt owed by Janet and Gordon Beasley to Princeton Woods Addition Homeowners Association;
3. Release of the lien on Janet and Gordon Beasley's property;
4. Reasonable attorney's fees, litigation expenses and costs incurred by Plaintiff in relation to this case, through the date of this offer, in an amount to be determined by the Court.

(J.A. 638 – 40; 641 – 43.)

Appellants do not put a value on the waiver of late fees, interest, collection costs, attorneys' fees or the release of the lien on their property. Appellants' cannot prove that the attorneys' fees incurred in preparation for the fee hearing exceeded what was available to them in the offers.

37

Fourth, even if the Appellants were to prove that they indeed recovered more in the litigation than any of Red Rock's settlement offers or offers of judgment, the amount which they recovered in excess would be negligible given the numbers involved. Collecting a few dollars greater than a settlement offer will not change the Appellants' degree of success from a limited one into a sufficiently greater success. The trial court's analysis would not be diminished even if Appellants could prove that they recovered a few dollars more than Red Rock's settlement offers and certainly would not provide enough to substantiate a finding that the trial court abused its discretion. Ten out of eleven counts did not make it to the jury.

### 4. The District Court's Ruling on Fees is Supported by *Nigh*

Appellants argue that the attorney's fees awarded here will actually dissuade attorneys from representing plaintiffs in FDCPA claims because they are so minimal. What it should do is dissuade attorneys from perpetuating litigation to build up fees. Appellants cite to *Nigh v. Koons Buick Pontiac GMC*, 478 F.3d 183 (4th Cir. 2007), in an attempt to support their policy argument that low fee awards counter Congressional intent behind consumer protection laws; however, as this court wrote in *Nigh,* "the Barber requirement rests on the idea that a prevailing plaintiff is less worthy of a fee award when one or more of his claims lack merit -- that is, when he cannot demonstrate that he deserves the compensation he

38

demanded in his complaint." *Id.* at 190. The result achieved in this case is far different from the results achieved in *Nigh*. Nigh received the maximum amount he could recover under TILA and the court characterized his result as successful. *Id.* Here the Appellants recovered even less than Red Rock tried to pay them for months prior to the litigation. The vast amount of fees incurred by the Appellants here occurred in pursuit of "a high risk adventure with a low probability of success." (J.A. 726.) Appellants unreasonably pursued this litigation and the court appropriately declined to award them for that.

For the foregoing reasons, the District Court's ruling with respect to attorney's fees was appropriate and did not amount to an abuse of discretion. The judgment of the District Court should be upheld.

## V.    **CONCLUSION**

The District Court committed no error on any of the rulings appealed by the Beasleys. Even if error were to be found by this Court, the error would be harmless and would not support remanding the case to the District Court. The Beasleys' arguments with respect to liability do not impact their substantial rights as the jury was ultimately presented with a single question of whether the Beasleys suffered actual damages as a result of Red Rock's violation of the FDCPA. The Beasleys were afforded the opportunity to present all of their evidence with respect to damages and the jury ultimately concluded that they suffered none. Under the

circumstances and history of these consolidated cases, the award of attorney's fees was appropriate, adequate and within the discretion of the trial court. Accordingly, Red Rock requests that the judgments of the trial court be affirmed and for an award of fees and costs associated with this appeal in accordance with Rule 39 of the Federal Rules of Appellate Procedure and Local Rule 39(a)-(c).

## VI.    STATEMENT AS TO ORAL ARGUMENT

Oral argument is not warranted under the circumstances of this case. The District Court made no error in its rulings. If this Court were to find error, none would constitute reversible error. Moreover, the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

RED ROCK FINANCIAL SERVICES, LLC
By Counsel

_____/s/_____
Virginia M. Sadler
Virginia State Bar No. 48736
Attorney for Financial Services, LLC
JORDAN COYNE LLP
10509 Judicial Drive, Suite 200
Fairfax, Virginia 22030
(Tel.) (703) 246-0900
(Fax) (703) 591-3673
E-Mail: v.sadler@jocs-law.com

40

## **CERTIFICATE OF COMPLIANCE (FRAP 32(A)(7)(b)(c)**

1.  This brief complies with the type-volume limitations of Fed. R. App. P.

    32(a)(7)(B) because the brief contains 9,436 words, excluding the parts of

    the brief exempted by Fed. R. App. P. 37(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P.

    32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because

    this brief has been prepared in a proportionally spaced typeface using Word

    in 14 Point Times New Roman.

Dated:       June 13, 2014                        _____/s/_____
                                                  Virginia M. Sadler

41

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Brief in Opposition was on this 13th day of June, 2014, served by electronic means through the ECF system, which will then send a notification of such filing to Ernest P. Francis, Esq., at his office at Ernest P. Francis, Ltd., 1665 North Fort Myer Drive, Suite 700, Arlington, Virginia 22209, through his e-mail at  epfrancisltd@verizon.net.


_____/s/_____
Virginia M. Sadler

ADDENDUM

Virginia Code § 17.1-223

Virginia Code § 55-106.2

Virginia Code § 55-516

Federal Rule of Civil Procedure 8

Federal Rule of Civil Procedure 61

Federal Rule of Civil Procedure 68

FDCPA 15 U.S.C 1692k.

## Virginia Code § 17.1-223:  Duty of clerk to record writings, etc., and make index

A. Every writing authorized by law to be recorded, with all certificates, plats, schedules or other papers thereto annexed or thereon endorsed, upon payment of fees for the same and the tax thereon, if any, shall, when admitted to record, be recorded by or under the direction of the clerk on such media as are prescribed by § 17.1-239. However, the clerk has the authority to reject any writing for filing or recordation unless (i) each individual's surname only, where it first appears in the writing, is underscored or written entirely in capital letters, (ii) each page of the instrument or writing is numbered, (iii) the Code section under which any exemption from recordation taxes is claimed is clearly stated on the face of the writing, (iv) the names of all grantors and grantees are listed as required by *§§ 55-48* and *55-58*, and if a cover sheet is used pursuant to *§ 17.1-227.1*, that the names of all grantors and grantees on the face of such writing are the same on the cover sheet, and (v) the first page of the document bears an entry showing the name of either the person or entity who drafted the instrument, except that papers or documents prepared outside of the Commonwealth shall be recorded without such an entry. The clerk has the authority to reject any deed for filing or recordation that does not comply with this section. Such writing, once recorded, shall be returned to the grantee unless otherwise indicated clearly on the face of the writing including an appropriate current address to which such writing shall be returned.

## Virginia Code § 55-106.2:  Presumption that writings admitted to record are in proper form

A writing that is not properly notarized in accordance with the laws of the Commonwealth shall not invalidate the underlying document, however, any such writing shall not be in proper form for recordation. All writings admitted to record shall be presumed to be in proper form for recording after having been recorded, and conclusively presumed to be in proper form for recording after having been recorded for a period of three years, except in cases of fraud.

## <u>Virginia Code § 55-516: Lien for assessments</u>

A. Once perfected, the association shall have a lien on every lot for unpaid assessments levied against that lot in accordance with the provisions of this chapter and all lawful provisions of the declaration. The lien, once perfected, shall be prior to all other subsequent liens and encumbrances except (i) real estate tax liens on that lot, (ii) liens and encumbrances recorded prior to the recordation of the declaration, and (iii) sums unpaid on and owing under any mortgage or deed of trust recorded prior to the perfection of said lien. The provisions of this subsection shall not affect the priority of mechanics' and materialmen's liens. Notice of a memorandum of lien to a holder of a credit line deed of trust under § 55-58.2 shall be given in the same fashion as if the association's lien were a judgment.

B. The association, in order to perfect the lien given by this section, shall file before the expiration of 12 months from the time the first such assessment became due and payable in the clerk's office of the circuit court in the county or city in which such development is situated, a memorandum, verified by the oath of the principal officer of the association, or such other officer or officers as the declaration may specify, which contains the following:

1. The name of the development;

2. A description of the lot;

3. The name or names of the persons constituting the owners of that lot;

4. The amount of unpaid assessments currently due or past due relative to such lot together with the date when each fell due;

5. The date of issuance of the memorandum;

6. The name of the association and the name and current address of the person to contact to arrange for payment or release of the lien; and

7. A statement that the association is obtaining a lien in accordance with the provisions of the Virginia Property Owners' Association Act as set forth in Chapter 26 (*§ 55-508* et seq.) of Title 55.

It shall be the duty of the clerk in whose office such memorandum is filed as hereinafter provided to record and index the same as provided in subsection D, in the names of the persons identified therein as well as in the name of the association. The cost of recording and releasing the memorandum shall be taxed against the person found liable in any judgment or decree enforcing such lien.

C. Prior to filing a memorandum of lien, a written notice shall be sent to the property owner by certified mail, at the property owner's last known address, informing the property owner that a memorandum of lien will be filed in the circuit court clerk's office of the applicable city or county. The notice shall be sent at least 10 days before the actual filing date of the memorandum of lien.

D. Notwithstanding any other provision of this section, or any other provision of law requiring documents to be recorded in the miscellaneous lien books or the deed books in the clerk's office of any court, on or after July 1, 1989, all memoranda of liens arising under this section shall be recorded in the deed books in the clerk's office. Any memorandum shall be indexed in the general index to deeds, and the general index shall identify the lien as a lien for lot assessments.

E. No suit to enforce any lien perfected under subsection B shall be brought or action to foreclose any lien perfected under subsection I shall be initiated after 36 months from the time when the memorandum of lien was recorded; however, the filing of a petition to enforce any such lien in any suit wherein the petition may be properly filed shall be regarded as the institution of a suit under this section. Nothing herein shall extend the time within which any such lien may be perfected.

F. The judgment or decree in an action brought pursuant to this section shall include, without limitation, reimbursement for costs and reasonable attorneys' fees of the prevailing party. If the association prevails, it may also recover interest at the legal rate for the sums secured by the lien from the time each such sum became due and payable.

G. When payment or satisfaction is made of a debt secured by the lien perfected by subsection B hereof, the lien shall be released in accordance with the provisions of *§ 55-66.3*. Any lien which is not so released shall subject the lien creditor to the penalty set forth in subdivision A 1 of *§ 55-66.3*. For the purposes of *§ 55-66.3*, the principal officer of the association, or any other officer or officers as the

declaration may specify, shall be deemed the duly authorized agent of the lien creditor.

H. Nothing in this section shall be construed to prohibit actions at law to recover sums for which subsection A hereof creates a lien, maintainable pursuant to § 55-515.

I. At any time after perfecting the lien pursuant to this section, the property owners' association may sell the lot at public sale, subject to prior liens. For purposes of this section, the association shall have the power both to sell and convey the lot and shall be deemed the lot owner's statutory agent for the purpose of transferring title to the lot. A nonjudicial foreclosure sale shall be conducted in compliance with the following:

1. The association shall give notice to the lot owner prior to advertisement required by subdivision 4. The notice shall specify (i) the debt secured by the perfected lien; (ii) the action required to satisfy the debt secured by the perfected lien; (iii) the date, not less than 60 days from the date the notice is given to the lot owner, by which the debt secured by the lien must be satisfied; and (iv) that failure to satisfy the debt secured by the lien on or before the date specified in the notice may result in the sale of the lot. The notice shall further inform the lot owner of the right to bring a court action in the circuit court of the county or city where the lot is located to assert the nonexistence of a debt or any other defense of the lot owner to the sale.

2. After expiration of the 60-day notice period specified in subdivision 1, the association may appoint a trustee to conduct the sale. The appointment of the trustee shall be filed in the clerk's office of the circuit court in the county or city in which such development is situated. It shall be the duty of the clerk in whose office such appointment is filed to record and index the same as provided in subsection D, in the names of the persons identified therein as well as in the name of the association. The association, at its option, may from time to time remove the trustee and appoint a successor trustee.

3. If the lot owner meets the conditions specified in this subdivision prior to the date of the foreclosure sale, the lot owner shall have the right to have enforcement of the perfected lien discontinued prior to the sale of the lot. Those

conditions are that the lot owner: (i) satisfy the debt secured by lien that is the subject of the nonjudicial foreclosure sale and (ii) pays all expenses and costs incurred in perfecting and enforcing the lien, including but not limited to advertising costs and reasonable attorneys' fees.

4. In addition to the advertisement required by subdivision 5, the association shall give written notice of the time, date and place of any proposed sale in execution of the lien, and including the name, address and telephone number of the trustee, by personal delivery or by mail to (i) the present owner of the property to be sold at his last known address as such owner and address appear in the records of the association, (ii) any lienholder who holds a note against the property secured by a deed of trust recorded at least 30 days prior to the proposed sale and whose address is recorded with the deed of trust, and (iii) any assignee of such a note secured by a deed of trust provided the assignment and address of the assignee are likewise recorded at least 30 days prior to the proposed sale. Mailing a copy of the advertisement or the notice containing the same information to the owner by certified or registered mail no less than 14 days prior to such sale and to lienholders and their assigns, at the addresses noted in the memorandum of lien, by ordinary mail no less than 14 days prior to such sale, shall be a sufficient compliance with the requirement of notice.

5. The advertisement of sale by the association shall be in a newspaper having a general circulation in the city or county wherein the property to be sold, or any portion thereof, lies pursuant to the following provisions:

a. The association shall advertise once a week for four successive weeks; however, if the property or some portion thereof is located in a city or in a county immediately contiguous to a city, publication of the advertisement five different days, which may be consecutive days, shall be deemed adequate. The sale shall be held on any day following the day of the last advertisement which is no earlier than eight days following the first advertisement nor more than 30 days following the last advertisement.

b. Such advertisement shall be placed in that section of the newspaper where legal notices appear or where the type of property being sold is generally advertised for sale. The advertisement of sale, in addition to such other matters as

the association finds appropriate, shall set forth a description of the property to be sold, which description need not be as extensive as that contained in the deed of trust, but shall identify the property by street address, if any, or, if none, shall give the general location of the property with reference to streets, routes, or known landmarks. Where available, tax map identification may be used but is not required. The advertisement shall also include the date, time, place, and terms of sale and the name of the association. It shall set forth the name, address and telephone number of the representative, agent, or attorney who may be able to respond to inquiries concerning the sale.

c. In addition to the advertisement required by subdivisions a and b above, the association may give such other further and different advertisement as the association finds appropriate.

6. In the event of postponement of sale, which postponement shall be at the discretion of the association, advertisement of such postponed sale shall be in the same manner as the original advertisement of sale.

7. Failure to comply with the requirements for advertisement contained in this section shall, upon petition, render a sale of the property voidable by the court.

8. In the event of a sale, the association shall have the following powers and duties:

a. Written one-price bids may be made and shall be received by the trustee from the association or any person for entry by announcement at the sale. Any person other than the trustee may bid at the foreclosure sale, including a person who has submitted a written one-price bid. Upon request to the trustee, any other bidder in attendance at a foreclosure sale shall be permitted to inspect written bids. Unless otherwise provided in the declaration, the association may bid to purchase the lot at a foreclosure sale. The association may own, lease, encumber, exchange, sell or convey the lot. Whenever the written bid of the association is the highest bid submitted at the sale, such written bid shall be filed by the trustee with his account of sale required under subdivision I 10 of this section and *§ 64.2-1309*. The written bid submitted pursuant to this subsection may be prepared by the association, its agent or attorney.

b. The association may require of any bidder at any sale a cash deposit of as much as 10 percent of the sale price before his bid is received, which shall be refunded to him if the property is not sold to him. The deposit of the successful bidder shall be applied to his credit at settlement, or if such bidder fails to complete his purchase promptly, the deposit shall be applied to pay the costs and expenses of the sale, and the balance, if any, shall be retained by the association in connection with that sale.

c. The property owners' association shall receive and receipt for the proceeds of sale, no purchaser being required to see to the application of the proceeds, and apply the same in the following order: first, to the reasonable expenses of sale, including attorneys' fees; second, to the satisfaction of all taxes, levies and assessments, with costs and interest; third, to the satisfaction of the lien for the owners' assessments; fourth, to the satisfaction in the order of priority of any remaining inferior claims of record; and fifth, to pay the residue of the proceeds to the owner or his assigns; provided, however, that the association as to such residue shall not be bound by any inheritance, devise, conveyance, assignment or lien of or upon the owner's equity, without actual notice thereof prior to distribution.

9. The trustee shall deliver to the purchaser a trustee's deed conveying the lot with special warranty of title. The trustee shall not be required to take possession of the property prior to the sale thereof or to deliver possession of the lot to the purchaser at the sale.

10. The trustee shall file an accounting of the sale with the commissioner of accounts pursuant to *§ 64.2-1309* and every account of a sale shall be recorded pursuant to *§ 64.2-1310*. In addition, the accounting shall be made available for inspection and copying pursuant to *§ 55-510* upon the written request of the prior lot owner, current lot owner or any holder of a recorded lien against the lot at the time of the sale. The association shall maintain a copy of the accounting for at least 12 months following the foreclosure sale.

11. If the sale of a lot is made pursuant to subsection I and the accounting is made by the trustee, the title of the purchaser at such sale shall not be disturbed unless within 12 months from the confirmation of the accounting by the

commissioner of accounts, the sale is set aside by the court or an appeal is allowed by the Supreme Court of Virginia, and a decree is therein entered requiring such sale to be set aside.

## Federal Rule of Civil Procedure 8 – General Rules of Pleading

(a)  Claim for Relief. A pleading that states a claim for relief must contain:

(1)  a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2)  a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3)  a demand for the relief sought, which may include relief in the alternative or different types of relief.

(b)  Defenses; Admissions and Denials.

(1) In General.  In responding to a pleading, a party must:

(A)  state in short and plain terms its defenses to each claim asserted against it; and

(B)  admit or deny the allegations asserted against it by an opposing party.

(2) Denials--Responding to the Substance.  A denial must fairly respond to the substance of the allegation.

(3) General and Specific Denials.  A party that intends in good faith to deny all the allegations of a pleading--including the jurisdictional grounds--may do so by a general denial. A party that does not intend to deny all the allegations must either specifically deny designated allegations or generally deny all except those specifically admitted.

(4) Denying Part of an Allegation.  A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest.

(5) Lacking Knowledge or Information.  A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial.

(6) Effect of Failing to Deny.  An allegation--other than one relating to the amount of damages--is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided.

(c) Affirmative Defenses.

(1) In General. In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including:

. accord and satisfaction;

. arbitration and award;

. assumption of risk;

. contributory negligence;

. duress;

. estoppel;

. failure of consideration;

. fraud;

. illegality;

. injury by fellow servant;

. laches;

. license;

. payment;

. release;

. res judicata;

. statute of frauds;

. statute of limitations; and

. waiver.

  (2) Mistaken Designation.  If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so.

(d)  Pleading to Be Concise and Direct; Alternative Statements; Inconsistency.

  (1) In General.  Each allegation must be simple, concise, and direct. No technical form is required.

  (2) Alternative Statements of a Claim or Defense.  A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

  (3) Inconsistent Claims or Defenses.  A party may state as many separate claims or defenses as it has, regardless of consistency.

(e)  Construing Pleadings. Pleadings must be construed so as to do justice.


**Federal Rule of Civil Procedure 61- Harmless Error**

Unless justice requires otherwise, no error in admitting or excluding evidence--or any other error by the court or a party--is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

**Federal Rule of Civil Procedure 68 – Offer of Judgment**

(a)  Making an Offer; Judgment on an Accepted Offer. At least 14 days before the date set for trial, a party defending against a claim may serve on an

opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

(b)  Unaccepted Offer. An unaccepted offer is considered withdrawn, but it does not preclude a later offer. Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs.

(c)  Offer After Liability Is Determined. When one party's liability to another has been determined but the extent of liability remains to be determined by further proceedings, the party held liable may make an offer of judgment. It must be served within a reasonable time--but at least 14 days--before the date set for a hearing to determine the extent of liability.

(d)  Paying Costs After an Unaccepted Offer. If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.


## FDCPA 15 U.S.C 1692k.  Civil liability

(a) Amount of damages.  Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this *title [15 USCS §§ 1692* et seq.] with respect to any person is liable to such person in an amount equal to the sum of--

  (1) any actual damage sustained by such person as a result of such failure;

  (2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $ 1,000; or

   (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $ 500,000 or 1 per centum of the net worth of the debt collector; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

(b) Factors considered by court.  In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors--

(1) in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional; or

(2) in any class action under subsection (a)(2)(B), the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.

(c) Intent.  A debt collector may not be held liable in any action brought under this *title [15 USCS §§ 1692* et seq.] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

(d) Jurisdiction.  An action to enforce any liability created by this *title [15 USCS §§ 1692* et seq.] may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

(e) Advisory opinions of Bureau.  No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any

advisory opinion of the Bureau, notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.